HASKINS *against* STUYVESANT.

Comparison of hands not admissible as subsidiary testimony upon the clashings of parol proof.

THIS was an action on a promissory note, made by Horace Johnson, in favor of and purporting to be indorsed by the defendant. The defence set up was, that the indorsement was a forgery.

The plaintiff produced many witnesses, who swore that they believed the instrument to be the hand-writing of the defendant; and on the part of the defendant many were produced who swore it was a forgery.

The plaintiff's counsel then offered to produce, to the jury, acknowledged signatures of the defendant, for the purpose of comparison: contending, that although this would not be good evidence, in the first instance, of the defendant's hand-writing, that, after a clashing of parol proof, they were entitled to offer it as subsidiary testimony. 4 Esp. Cases, 117.

VAN NESS, J. I have examined the decisions on this point with attention, and am satisfied that the weight of authority is against the admission of the testimony offered. I have conversed on this subject with some of my brethren, who were of the same opinion with myself. I shall, therefore, exclude the testimony.(1)

*Emmet* and *Van Wyck*, for the plaintiff.

*Jay* and *Colden*, for the defendant.

(1) The common and well established practice and usage of courts of common law, as to the proof of hand-writing, is very accurately stated by Lord Eldon, in the case of *Eagleton* et al. v. *Kingston*, 8 Vesey, Junior, 773. " When

I first came into the profession, the rule as to hand-writing in Westminster Hall, in all the courts, was this: You called a witness and asked, whether he had ever seen the party write; if he said he had, whether more or less frequently, if ever; that was enough to introduce the subsequent question, whether he believed the paper to be his hand-writing. If he answered that he believed it to be so, that was evidence to go to the jury; if he refused to answer to his belief, he was pressed perhaps too much to form a belief. If the witness will not take upon himself to say, he believes it, but says he thinks it like, this is not evidence, although Lord Kenyon, in the case of *Ganell* v. *Alexander*, (4 Esp. 37,) is made to say it is." In the same case, Lord Eldon expressly decides, that comparison of hands is not evidence. He considers it as a novelty, and declares that, until lately, he had never heard of evidence in Westminster Hall, of comparison of hand-writing, by those who have never seen the party write, though such evidence had been frequently received in the Ecclesiastical courts.

In the case of the *King* v. *Cator*, (4 Esp. 117,) the admissibility of this species of evidence is very fully discussed, and all the cases bearing on the subject considered. That was an information for a libel, in which the prosecutor lay under considerable difficulty, in proving the hand-writing of the libel to be that of the defendant, it being, in appearance, different from his common character in writing. And although the counsel in that case laid a strong and plausible foundation for its admission, by producing the inspectors of franks from the post-office, men skilled in the detection of forgeries, who proved the hand-writing to the libel to be a feigned hand, still the court would not allow them to compare it with the acknowledged hand-writing of the defendant, and say whether they were the same. This decision was made after great deliberation. Baron Hotham declaring, in pronouncing the decision, that he had spent three weeks in thinking upon it. In one case, Lord Kenyon allowed the jury to examine papers, admitted to be the party's hand-writing, and to compare them with the writing in question, and to draw their own conclusions. *Allesbrook* v. *Roach*, 1 Esp. 351, and in the case of *Titford* v. *Knott*, 2 Johns. Cases, 214, this species of evidence was, by consent, allowed to go to the jury, and the court, in pronouncing a final decision, declined deciding the question of its admissibility for that reason. In a case, however, that preceded the case of *Allesbrook* v. *Roach*, Lord Kenyon would not allow this comparison to be made by the jury. *Macferson* v. *Thoytes*, Peake, 19. It has been also overruled in Connecticut, in the case of the *Commonwealth* v. *King*, reported in a note to the case of *Macferson* v. *Thoytes*. There is, however, one exception to this general rule, in the case of a person, long since dead, of whose signature, after a lapse of years, no better proof can be obtained. 7 East. 282, pa. Mr. Evans, in his edition of Pothier on Obligations, (vol. 2, p. 184,) makes the following remarks on this subject: "It is

now very clearly established, by several authorities, that the proof of hand-writing must be made by persons having a previous knowledge of it, either from actually seeing the party write, or from correspondence; and that the comparison of an admitted, with a disputed writing, cannot be allowed, either by the inspection of the court and jury, or by the assistance of persons conversant with the examination of hand-writing, for the purpose of ascertaining its reality, or detecting its forgery," &c.  "But where, in point of reason, is the objection to a proof by comparison of hands, as founded upon an inspection at the trial?  It will surely be admitted, that the real object is the investigation of truth, and, by the indiscriminate rejection of a means of establishing the truth, which, in many instances, must be more convincing than the evidence actually received, there is a frequent risk of the failure of justice, &c.  What is the common evidence of knowledge but an act of comparison; a comparison of the object presented to the sight, with the object imprinted by memory in the mind—with the image and copy of the supposed reality? And when the comparison is made, not with this imperfect and fallacious copy, but with an indisputed original applied with the skill and experience of persons habitually devoted to similar inquiries, it is deemed not only a matter of technical caution, but an essential point of constitutional liberty, to reject the assistance which it may be naturally expected to afford," &c. Vide *post, Administrator of Rogers* v. *Shaler,* and note.

The anxiety of jurors to compare acknowledged with alleged spurious signatures in cases of supposed forgery, their manifest dissatisfaction when such testimony is excluded, cannot fail to have made a strong impression on the mind of every advocate.  There is, in truth, a subtlety in the rule which allows the witness to compare the hand-writing produced, with the standard, however vague, which his own mind may furnish, and which prohibits the same comparison with the more vivid standard in the admitted signature before him.

The modern English cases are certainly opposed to the admissibility of such proof; but the American cases vary.  Mr. Greenleaf has subjected these to a critical examination, and gives the following result.  1 Green. 616.

The English rule is adopted, and such testimony rejected, in the following states: New York, Virginia, North Carolina.

In the following states, it is the settled practice to admit any papers to the jury, whether relevant to the issue or not, for the purpose of comparison of hand-writing: Massachusetts, Maine, Connecticut.

In the following states, the admissibility of such papers has been limited to cases where other proof of hand-writing is already in the cause, and for the purpose of turning the scale in doubtful cases: New Hampshire, South Carolina.  In Pennsylvania, the admission has been limited to papers conceded to be genuine.  See the cases referred to, 1 Greenl. 616, note.